IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LYNN R. ZWYGART,

    Plaintiff,

v.

                                                                      Case No. 05-2050-JWL

**THE BOARD OF COUNTY COMMISSIONERS**
**OF JEFFERSON COUNTY, KANSAS**

    Defendant.

**MEMORANDUM AND ORDER**

Plaintiff Lynn R. Zwygart filed suit against defendant, The Board of County Commissioners of Jefferson County, Kansas ("the County"), alleging violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and 42 U.S.C. § 1983. He alleges that the County wrongfully terminated his employment following a medical leave of absence based on his "record of" disability. He further alleges that in doing so, the County violated section 1983 by depriving him of his constitutional property right to his continued employment based on an implied-in-fact contract. This matter comes before the court on the County's motion for summary judgment.[1] For the reasons explained below, the County's

---

[1] In response to the County's reply brief, Mr. Zwygart submitted a surreply brief and alleged that the County's 30-page reply brief raised entirely new issues. The County then submitted a response to the surreply. Because the reply could be construed to raise new arguments,, the court considered the arguments raised in the surreply..

1

motion for summary judgment is granted.  The court will dismiss the entirety of Mr. Zwygart's suit.

## **Background**

The following facts are either uncontroverted or related in the light most favorable to plaintiff, the nonmoving party.  The County first employed Mr. Zwygart as a truck driver in 1986.  In this role, he primarily drove his assigned truck.  He underwent open heart surgery in 2001, and three months later he returned to full-time work.

The County, however, terminated his employment in 2002.  In a letter dated July 25, 2002, the County stated that it was basing its termination decision on "absenteeism from work and past problems."  That letter recounted a series of problems dating back to 1990 when he used 178 hours of pay without leave.  It included warnings or infractions from eight separate incidents in which Mr. Zwygart violated the County's policies.

Despite this termination, the parties bargained for a comprise in which the County agreed to rehire Mr. Zwygart.  Their bargain is memorialized in a July 30, 2002, letter sent to the County by Mr. Zwygart's attorney and signed by Mr. Zwygart.  As stated in the letter, the County Road Department rehired him under the following three qualifications:

   1. All use of sick leave will require a doctor [sic] slip.
   2. For no reason will leave without pay be granted.
   3. Any violation of these conditions will result in immediate termination.

Following this agreement and Mr. Zwygart's return to work, he contracted a bacterial infection on May 12, 2003, that ultimately caused him to undergo open heart surgery on September 3, 2003.  Upon learning of his infection and a doctor's note indicating his disability

in May, the County immediately placed Mr. Zwygart on family and medical leave. This three-month period expired on August 3, 2003. Mr. Zwygart also had exhausted all sick leave, vacation, and shared leave. The County then allowed him some period of leave without pay. The exact duration of approved leave without pay is unclear, but Mr. Zwygart has admitted that he did not contact the County after his operation on September 3, 2003. Ultimately, the County informed him that it was terminating his employment through a letter he received on October 30, 2003, from Richard Teaford, the County Engineer.

Mr. Teaford's letter advised that the County was terminating Mr. Zwygart because he had "long exhausted all sick, vacation and other time, which [he had] used since the onset of [his] medical condition." Mr. Zwygart appealed his termination by filing a grievance within the five-day appeal period provided by the County's employee handbook. In response, on December 1, 2003, a grievance committee held a hearing. Both parties were represented, and during the hearing Mr. Zwygart requested that the County accommodate his perceived disability either by extending his leave without pay status, by reassigning him to another position, or by altering his job duties.

Before it reached its decision, the grievance committee received two doctors' notes relating to Mr. Zwygart's status. One note, dated November 28, was from Mr. Zwygart's primary care physician, and the other note, dated December 3, was from his cardiologist, who advised that Mr. Zwygart was "ready to return to work without restrictions." Despite the medical releases it received, the grievance committee issued its written findings and report on December 5, 2003, and suggested that for six independent reasons the County should terminate

Mr. Zwygart's employment. On December 8, 2003, the County Commission passed a unanimous motion to uphold the recommendation of the grievance committee, which officially terminated Mr. Zwygart's employment with the County.

Mr. Zwygart alleges numerous procedural flaws during all stages of the County's proceedings. He claims that he was denied the right to effectively cross-examine a key witness and also that the tribunals were biased and riddled with a conflict of interest. Moreover, he claims that the County's employee handbook created an implied employment contract, and that he fully expected to return to work after his unpaid leave of absence.

### Standard of Review

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union,* 279 F.3d 901, 904 (10th Cir. 2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The moving party initially must show the absence of a genuine issue of material fact and

entitlement to judgment as a matter of law. *Spaulding,* 279 F.3d at 904 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)). In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. American Guarantee & Liability Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir.2000) (citing *Adler,* 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)); *Anderson,* 477 U.S. at 256; *Celotex,* 477 U.S. at 324. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore, Oklahoma,* 218 F.3d 1190, 1197-98 (10th Cir.2000) (quoting *Adler,* 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibits incorporated therein." *Adams,* 233 F.3d at 1246.

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327 (quoting Fed.R.Civ.P. 1). In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on

suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

## Analysis

**1. Disability Claim under the ADA**

The ADA prohibits a covered entity from discriminating against a "qualified individual with a disability" because of the individual's disability with respect to terms, conditions, and privileges of employment. *See* 42 U.S.C. § 12112(a); *Selenke v. Medical Imaging of Colorado,* 248 F.3d 1249, 1255 (10th Cir. 2001). To establish a prima facie case of discrimination under the ADA, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) that he is qualified (i.e., able to perform the essential functions of the job with or without accommodation); and (3) that he was discriminated against because of his disability. *See McKenzie v. Dovala*, 242 F.3d 967, 969 (10th Cir. 2001). Under this burden-shifting regime, the plaintiff must raise a genuine issue of fact on each element, and upon doing so, the burden shifts to the defendant "to offer a legitimate nondiscriminatory reason for its employment decision." *Taylor v. Pepsi-Cola Co.*, 196 F.3d 1106, 1109 (10th Cir. 1999).

In its motion for summary judgment, the County contends that Mr. Zwygart cannot establish the first or second elements of his prima facie case.[2] Because the court concludes that plaintiff has failed to establish the first element—that he is disabled within the meaning

---

[2] In his summary judgment opposition brief, Mr. Zwygart asserts that he has two "theories of recovery" under the ADA: (1) his record of disability and (2) the County's failure to make an accommodation. This characterization is incorrect. Rather, these are more properly labeled as elements one and two of a cognizable claim under the ADA.

of the ADA — "the court declines to address whether plaintiff has satisfied the second and third prongs of his prima facie case." *Sink v. Wal-Mart Stores, Inc.*, 147 F. Supp. 2d 1085, 1092 (D. Kan. 2001).

### A. "Record of"

The Tenth Circuit has articulated the proper standard for evaluating a plaintiff's claim of a "record of" disability. To meet this standard, Mr. Zwygart "must have a history of, or have been misclassified as having, an impairment that has substantially limited a major life activity." *Rakity v. Dillon Companies, Inc.* 302 F.3d 1152, 1159 (10th Cir. 2002). The "record of" provision of the ADA was designed "to ensure that people are not discriminated against because of a history of disability." *Id.* (citing 29 C.F.R. pt. 1630, App. § 1630.2(k)). Plaintiff bears the burden of showing that he has an impairment that substantially limits a major life activity. *See Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195 (2002). A major life activity is a "basic activity that the average person in the general population can perform with little or no difficulty." *Id.* (quoting *Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir. 1999)). Major life activities include functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, sleeping, sitting, standing, lifting, reaching, and working." *Rakity*, 302 F.3d at 1158 (quoting *Doyal v. Okla. Heart, Inc.*, 213 F.3d 492, 495-96 (10th Cir.2000)). In this realm, the Court considers three factors: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent long term impact, or expected permanent or long term impact of or resulting from the impairment. *Id.* at 196 (citing 29 C.F.R. § 1630.2(j)(2)(i)-(iii)).

Mr. Zwygart seeks to establish his "record of" disability based on his heart problems and absence from work during May to December 2003. During this time, the evidence submitted shows that he certainly was unable to return to work as a truck driver, but that is not the proper inquiry under the "record of" provision of the ADA. Instead, "[t]he central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with [his] specific job.'" *Rakity*, 302 F.3d at 1159. In analyzing the aforementioned three factors, Mr. Zwygart's claim fails under the second two prongs: the duration of his disability was short and he has no evidence of any long-term impact. *See Sorensen v. University of Utah Hosp.*, 194 F.3d 1084, 1087 (10th Cir. 1999) ("The duration and long term impact of Plaintiff's impairment, however, weigh against finding that [his] impairment substantially limited a major life activity."). In fact, the December 3 cardiologist's note that he submitted to the grievance committee indicated that he was "ready to return to work without restrictions." This vitiates any possible allegation of a long-term disability.

In *Rakity*, moreover, the Tenth Circuit rejected "a record" of disability claim by analogizing to a situation in which "a recorded impairment was not substantially limiting where a police officer was hospitalized for a month, remained at home for six months, and was restricted to light duty for seven years after returning to work." 302 F.3d at 1161. Based on that guidance, Mr. Zwygart's claim fails to establish a "record of" disability.

In addition to the above analysis, the undersigned previously has analyzed a claim for a "record of" disability involving facts virtually identical to the facts at issue here. In *Sink v.*

8

*Wal-Mart Stores, Inc.*, 147 F. Supp. 2d 1085, 1093 (D. Kan. 2001), the plaintiff alleged a "record of" disability based on heart problems and two strokes that restricted him from working "at all" for six months. *Id*. at 1093. In applying the three factors, this court found that the plaintiff's allegation failed to show "that he was 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.'" *Id*. at 1094 (quoting *Sorensen*, 194 F.3d at 1088). In addition, the plaintiff there failed to produce any evidence to support his claim that he could not work "at all" during his sixth months away from employment with the defendant. *Id.* That deficiency is equally present here, as Mr. Zwygart has not produced any evidence that he was restricted by his doctors from working any job other than as a truck driver for the County from May to December 2003. This is fatal because his inability to work as a truck driver "does not render him 'disabled within the meaning of the ADA." *Id.* (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999) ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.")).

Ultimately, as this court held in *Sink*, "[i]n the absence of evidence suggesting that his impairment significantly restricts his ability to perform a class of jobs or a broad range of jobs in various classes, the court concludes that plaintiff has not sufficiently shown that his condition substantially limits his ability to work." *Id.* (citing *Selenke v. Medical Imaging of Colorado*, 248 F.3d 1249, 1257 (10th Cir. 2001) (plaintiff failed to show that she was substantially limited in her ability to work where she failed to present evidence from which a

reasonable jury could conclude that she was unable to perform "either a class of jobs or a broad range of jobs in various classes as compared to the average person.")).  In sum, Mr. Zwygart has not produced evidence that could establish a "record of" disability within the ADA, he has failed to establish the first element of a cognizable claim under the ADA, and this claim fails as a matter of law.

**2.      Implied-in-Fact Contract Creating a Property Interest under Section 1983**

Mr. Zwygart asserts a procedural due process violation under the Fourteenth Amendment based on the inadequacy of the proceedings taken by the grievance committee and the County Commission.  To establish a cognizable claim under § 1983, however, Mr. Zwygart must first establish a constitutional right.  *Anglemyer v. Hamilton County Hospital*, 58 F.3d 533, 536 (10th Cir. 1995).  The court applies a two-step inquiry.  For the court to even address the level of process afforded, Mr. Zwygart must first prove that he has "a protected interest such that the due process protections were applicable"; only after meeting the first step does the court decide whether he "was afforded an appropriate level of process."  *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).  "In light of this framework, we turn to the threshold issue of whether Mr. [Zwygart] possessed a protected property interest."  *Id.*

As a public employee asserting an entitlement to continued employment based on an implied-in-fact contract, "the touchstone is whether, under state law, the employee has a 'legitimate claim of entitlement' in continued employment, as opposed to a 'unilateral expectation' or 'an abstract need or desire' for it."  *Id.* (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571(1972)).  A plaintiff may establish a legitimate claim to

10

an entitlement under several types of state law. *Id*.

Under Kansas law, nevertheless, "public law is presumptively at-will." *Id*. at 1136. *See also Anglemyer*, 58 F.3d at 537 ("Like most states, Kansas historically has followed the common law doctrine of employment at-will. Employees are considered to be at-will in the absence of an express or implied contract"). Thus, unless Mr. Zwygart can produce evidence to the contrary, he "does not possess a protected property interest under Kansas law for purposes of procedural due process analysis." *Id*.

The Kansas Supreme Court has recognized that in some instances an employer can create an implied-in-fact contract based on representations made in an employment manual or other sources. In making this assessment, the "relevant inquiry . . . is whether the parties intended to enter into an agreement restricting the employer's ability to terminate its employees at will. The employee's subjective expectation of continued employment is not enough." *Emerson v. Boeing Co.*, 1995 WL 265932, *1 (10th Cir. 1995) (citation omitted)). The mutual intent of the parties to create an implied-in-fact contract is based on the totality of the circumstances. *Anglemyer*, 58 F.3d at 537.

Although ordinarily this a fact question for a jury, it does not preclude a district court from granting summary judgment. Rather, "in order to survive a summary judgment motion, it is incumbent upon the plaintiff to assert specific facts tending to establish a triable issue concerning whether the parties possessed the mutual intent to create a legitimate expectation of continued employment." *Emerson v. Boeing Co.*, 1995 WL 265932, *1 (10th Cir. 1995) (collecting federal cases applying Kansas law where summary judgment in this context has

been affirmed). *Cf. Anglemyer*, 58 F.3d at 537 (observing that "the federal courts have been more willing to grant summary judgment in favor of employers when applying Kansas law.").

Attempting to make this threshold showing, Mr. Zwygart points to the County's employment manual regarding leave without pay. It states: "Employees on <u>approved</u> leave without pay will maintain their tenure and position with the County as of the date of leave." (emphasis added). His reliance on this one line of text is unfounded based on other, more relevant, text from the County's manual. For instance, under the provision regarding leave without pay, the manual plainly states that "notwithstanding the above, an employee on leave without pay who fails to return to work will be dismissed effective his or her last day of work or paid leave, whichever is later." The manual also explicitly warns that all employees are at-will and "may be dismissed at any time, for any reason, at the sole and absolute discretion of the County." Given this clarity, Mr. Zwygart's attempt to muddle the issue of his approved leave without pay is unavailing. *See also Rouse v. Peoples Natural Gas Co.*, 605 F. Supp. 230, 232 (D. Kan. 1985) ("The Kansas rule remains that an employment manual, that is only a unilateral expression of a company policy and is not bargained for, cannot alone be the basis of an employment contract.").

In cases where the Tenth Circuit has stated that summary judgment is inappropriate, it has highlighted at least one other key factor creating a property interest. In *Anglemeyer*, for instance, it emphasized that "the fact [plaintiff] repeated the representation made to her by [her supervisors] that employees would only be fired for cause in a meeting which included members of the Board of Directors is critical." *Id.* 538. In this case, however, Mr. Zwygart

simply cites the vague deposition testimony of Mr. Oliver, who never even discussed Mr. Zwygart's leave without pay status with him. More importantly, Mr. Zwygart does not claim that he relied on any statements by Mr. Oliver that Mr. Zwygart could return to work following his approved leave without pay. There is no appropriate comparison between the facts of this case and the facts in *Anglemyer*.

In addition, although Mr. Zwygart purports that the record supports his assertion that he was on approved leave without pay from September 16 until October 30, he fails to properly cite to anything in the record to substantiate that his leave was affirmatively approved by the County. Once again, his citations to the County's time records and the testimony of Mr. Oliver are unconvincing  Neither supports his claim that the County extended him *approved* leave without pay. These two exhibits simply reveal that the County gratuitously did not immediately terminate Mr. Zwygart's employment when his sick leave and vacation expired. This is not the same as communicating with him that he was on leave without pay status and should rely on this agreement that he would return to work.

As a result, then, Mr. Zwygart's own affidavit is the only evidence that comes close to supporting his allegation of an implied-in-fact contract, but as the County argues, this affidavit is an ad hoc tactical statement made in anticipation of litigation. It holds no legal significance because a "conclusory and self-serving" affidavit is "not sufficient" to withstand summary judgment. *Salguero v. City Of Clovis*, 366 F.3d 1168, 1177 (10th Cir. 2004).

Finally, as the County suggests, probably the best indication of the intent of the parties is the specific bargain they reached when the County agreed to rehire Mr. Zwygart after he was

13

terminated in 2002. The July 30, 2002, letter sent by his counsel to the County stated that Mr. Zwygart agreed that his rehiring was conditional on the following three factors:

1. All use of sick leave will require a doctor [sic] slip.
2. For no reason will leave without pay be granted.
3. Any violation of these conditions will result in immediate termination.

This bargained-for agreement is specifically between Mr. Zwygart and the County. Unlike the employee manual, it is not a universal statement of the County's general policy. Because Mr. Zwygart (represented by counsel) agreed that he would not be granted leave without pay for any reason, and he does not allege that this bargain was invalid, it is unclear why he should be allowed to rely on the less clear and superceded statements of the employee manual.

In his surreply, Mr. Zwygart alleges that his July 30, 2002, letter to the County created a "for cause" implied contract between the parties and that the County waived its rights under the letter by not immediately terminating him. Aside from making entirely new arguments not properly included in his response, Mr. Zwygart fails to cite to authority for his assertions of a "for cause" contract or waiver, which are entirely unsupported. *See*, *e.g.*, *Kastner v. Blue Cross and Blue Shield of Kansas, Inc.*, 21 Kan. App. 2d 16, 29 (1995) (noting that "informing an employee of certain grounds for termination is not the same as telling an employee that he or she will not be terminated absent those grounds"); *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir. 1988) (same). Again, the County is not barred from terminating his employment simply because it allowed him to continue his at-will status even though it could have

14

terminated him. After all, that is the essence of at-will employment.

Because Mr. Zwygart fails to clear the initial hurdle of establishing a protected property interest, the court need not reach the second step of deciding whether the process he in fact received was fair.

### **Conclusion**

For the reasons above, Mr. Zwygart has failed to establish a claim under either the ADA or section 1983. Because he has failed to raise a genuine issue of material fact on either claim, the County is entitled to summary judgment as a matter of law.

**IT IS THEREFORE ORDERED BY THE COURT** that the County's motion for summary judgment (doc. 25) is granted.

**IT IS SO ORDERED** this 31st day of January, 2006.

                                                s/ John W. Lungstrum  
                                                John W. Lungstrum  
                                                United States District Judge